UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EUGENE WRIGHT,

               Plaintiff,

v.

SHERYL STEWART, *Attica Nurse*,

               Defendant.

**DECISION AND ORDER**
10-CV-31S

## I. INTRODUCTION

In this action, pro se Plaintiff Eugene Wright alleges, pursuant to 42 U.S.C. § 1983, that Defendant Sheryl Stewart, a nurse at Attica Correctional Facility, was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when she knowingly administered him the wrong medicine, which allegedly caused him to suffer a stroke. Presently before this Court is Stewart's Motion to Dismiss, or alternatively, for Summary Judgment. (Docket No. 22.) For the following reasons, Stewart's motion is granted.

## II. BACKGROUND

At all times relevant, Wright was an inmate at Attica Correctional Facility under the care and custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). (Defendant's Statement of Undisputed Facts ("Defendant's Statement"), Docket No. 22-2, ¶ 2.) Stewart was employed by DOCCS as a nurse at Attica. (Defendant's Statement, ¶ 3.)

Wright maintains that Stewart administered him the wrong allergy medicine in August 2006, despite Wright informing her that she was not administering the correct

medication. (Third Amended Complaint, Docket No. 7, p. 5.) Stewart allegedly refused to confirm that she was giving Wright the correct medication and instead allegedly told Wright that she would prepare a Misbehavior Report against him if he did not take the medication. (Id., p. 6.) Wright took the medicine as ordered and within 45 minutes suffered a stroke that hospitalized him for almost one month. (Id.)

Approximately one year later, on August 8, 2007, Wright filed an Inmate Grievance form relating to this incident. (Third Amended Complaint, pp. 16-17.) That same day, inmate grievance officials at Attica sent Wright a memorandum indicating that his grievance was rejected as untimely. (Id., p. 18.) Wright then wrote simultaneously to the Superintendent of Attica and the Commissioner of DOCCS on August 20, 2007, to seek further review of his grievance. (Id., pp. 21, 22.) Notably, however, the Central Office Review Committee, which maintains all files of grievances and appeals received from Inmate Grievance Program Offices, contains no record of any grievance or appeals filed by Wright stemming from this incident. (Declaration of Jeffrey Hale, Docket No. 22-4, ¶¶ 4, 11.)

### III. DISCUSSION

Cognizant of the distinct disadvantage that pro se litigants face, federal courts routinely read their submissions liberally, and interpret them to raise the strongest arguments that they suggest. See Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). This is especially important when reviewing pro se complaints alleging civil rights violations. See Weinstein v. Albright, 261 F.3d 127, 132 (2d Cir. 2001). Since Wright is proceeding

pro se, this Court has considered his submissions and arguments accordingly.

Stewart moves to dismiss or for summary judgment on the grounds that (1) Wright failed to exhaust his administrative remedies, (2) Wright's claim is barred by the doctrines of collateral estoppel and *res judicata*,[1] and (3) Stewart is entitled to qualified immunity. Because the undisputed evidence establishes that Wright failed to exhaust his administrative remedies, dismissal of the complaint is required, and this Court need not reach Stewart's remaining grounds for relief.

**A.     Summary Judgment**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a).   A fact is "material" if it "might affect the outcome of the suit under the governing law."   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).   An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion."   Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970).   "Only when reasonable minds could not differ as to the import

---

[1] Wright litigated medical negligence claims arising from Stewart's conduct against the State of New York in the New York Court of Claims.  (Declaration of Stephanie J. Calhoun, Docket No. 22-3, pp. 17-19.)   The matter proceeded to trial on October 27, 2010.   (Id.)   On November 23, 2010, the court dismissed Wright's claims in their entirety on the State's motion due to Wright's failure to present required expert testimony. (Id.)   Without reaching Stewart's collateral estoppel and *res j*u*dicata* arguments, this Court notes that there is no indication that the constitutional claim that Wright asserts against Stewart in this action were ever at issue in his case against the State of New York.

of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004) (citations omitted).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment. Anderson, 477 U.S. at 252. A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998). That is, there must be evidence from which the jury could reasonably find for the non-moving party. Anderson, 477 U.S. at 252.

As noted, "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" Triestman v. Fed. Bur. of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)). "A *pro se* plaintiff, however, cannot defeat a motion for summary judgment by simply relying on the allegations of his complaint; he must present admissible evidence from which a reasonable jury could find in his favor." Belpasso v. Port Auth. of NY & NJ, 400 Fed. Appx. 600, 601 (2d Cir. 2010); see Champion v. Artuz, 76 F.3d 483, 485 (2d Cir. 1996) (summary judgment properly entered against *pro se* plaintiff who failed to oppose motion with admissible evidence after receiving

plainly worded warning of the consequences of such failure).

In the end, the function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

**B.**   **42 U.S.C. § 1983**: **Eighth Amendment Deliberate Indifference Claim**

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. See 42 U.S.C. § 1983. On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution. See Graham v. Connor, 490 U.S. 386, 393-94,109 S. Ct. 1865, 1870, 104 L. Ed. 2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979)). Accordingly, as a threshold matter in reviewing claims brought under § 1983, it is necessary to precisely identify the constitutional violations alleged. See Baker, 443 U.S. at 140. Here, Wright's claim falls under the Eighth Amendment.

The Eighth Amendment, which applies to the States through the Fourteenth Amendment, "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." Wilson v. Seiter, 501 U.S. 294, 297, 111 S. Ct. 2321, 2323, 115 L. Ed. 2d 271 (1991); U.S. Const. amend. VIII. As such, prison conditions and the treatment prisoners receive while incarcerated are subject to scrutiny under the Eighth

Amendment. See DeShaney v. Winnebago County Dept. of Social Svcs., 489 U.S. 189, 199-200, 109 S. Ct. 998, 1005-1006, 103 L. Ed. 2d 249 (1989).

In addition, the Supreme Court has recognized that a prisoner's claim that he was intentionally denied medical treatment is cognizable under the Eighth Amendment and § 1983:

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.
>
> . . .
>
> In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend evolving standards of decency in violation of the Eighth Amendment.

Estelle v. Gamble, 429 U.S. 97, 104, 106, 97 S. Ct. 285, 291, 292, 50 L. Ed. 2d 25 (1976)(quotations and citations omitted).

"A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components – one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000) (citing Hudson v. McMillian, 503 U.S. 1, 7-8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992); Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999)). With respect to a claim of deliberate indifference to a serious medical need, a prisoner must show that

he suffered from a "sufficiently serious" medical condition, see Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998), and that the defendants acted with a "sufficiently culpable state of mind," Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).

The subjective component "requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." Sims, 230 F.3d at 21 (citations omitted). The objective component is "contextual and responsive to contemporary standards of decency." Id. (quoting Hudson, 503 U.S. at 8).

> "An official acts with the requisite deliberate indifference when he 'knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"

Brown v. Picarelli, No. 96 Civ. 1222, 2003 WL 1906180, at *6 (S.D.N.Y. Apr. 15, 2003)(quoting Farmer, 511 U.S. at 837).

Wright alleges a deliberate-indifference-to-medical-needs claim arising out of Stewart's alleged insistence that he take the wrong medication, but as stated below, Wright has failed to exhaust his administrative remedies with respect to this claim. His complaint must therefore be dismissed.

**C.    Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by

a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e (a); see also Woodford v. Ngo, 548 U.S. 81, 85, 126 S. Ct. 2378, 165 L. Ed. 2d (2006) ("Exhaustion is . . . mandatory. Prisoners must now exhaust all 'available' remedies[.]"); Hargrove v. Riley, No. 04–CV–4587, 2007 WL 389003, at *5-*6 (E.D.N.Y. Jan. 31, 2007) ("The exhaustion requirement is a mandatory condition precedent to any suit challenging prison conditions, including suits brought under Section 1983."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002).

In the event the defendant establishes that the inmate plaintiff failed to fully complete the administrative review process before commencing the action, the plaintiff's complaint is subject to dismissal. Pettus v. McCoy, No. 04–CV–0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006); see also Woodford, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." Woodford, 548 U.S. at 95; accord Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007).

In New York, formal exhaustion of administrative remedies for prison inmates requires compliance with a detailed three-step grievance and appeal procedure. See Morrison v. Parmele, 892 F. Supp. 2d 485, 487 (W.D.N.Y. 2012) (citing 7 N.Y.C.R.R. § 701.5)). The grievance process outlined at § 701.5 provides that: (1) the inmate must

8

submit a written complaint to the Grievance Clerk within 21 calendar days of the alleged occurrence; the Grievance Clerk then submits the complaint to the Inmate Grievance Resolution Committee ("IGRC") for investigation and review; (2) if the IGRC denies the grievance, the inmate may appeal to the superintendent of the facility by filing an appeal with the IGP clerk; (3) after the superintendent issues a decision, the inmate may appeal to the Central Office Review Committee ("CORC"), which makes the final administrative determination. See Thousand v. Corrigan, 9:15-CV-01025 (MAD/ATB), 2017 WL 1093275, at *3 (N.D.N.Y. Mar. 23, 2017); Turner v. Goord, 376 F. Supp. 2d 321, 323 (W.D.N.Y. 2005). "A prisoner has not exhausted his administrative remedies until he goes through all three levels of the grievance procedure." Hairston v. LaMarche, Case No.05 Civ. 6642, 2006 WL 2309592, at *7 (S.D.N.Y. Aug.10, 2006) (citing cases). If all three levels of review are exhausted, the prisoner may seek relief in federal court under § 1983. See Thousand, 2017 WL 1093275, at *3; Bridgeforth v. DSP Bartlett, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010).

While the Supreme Court has deemed the exhaustion of administrative remedies generally mandatory, it has held that a prisoner's duty to exhaust is limited to "available" administrative remedies.[2] Ross v. Blake, __ U.S. __, 136 S. Ct. 1850, 1855, 195 L. Ed. 2d 117 (2016) ("A prisoner need not exhaust remedies if they are not 'available.'"). "An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."

---

2 With this holding, the Court in Ross rejected the Second Circuit's "extra-textual" exception to the exhaustion requirement, which allowed courts to consider whether "special circumstances" justified a prisoner's failure to exhaust administrative remedies. See Williams, 829 F.3d 118, 123 (2d Cir. 2016) (recognizing that Ross largely abrogates the framework set forth in Giano v. Goord, 380 F.3d 670, 675-76 (2d Cir. 2004) and Hemphill v. New York, 380 F.3d 680 (2d Cir. 2004), which set forth a "special circumstances" exception to the PLRA's exhaustion requirement).

Id. at 1858. To be "available," administrative remedies (e.g., grievance procedures) must be "capable of use to obtain some relief for the action complained of." Id. at 1859 (quoting Booth v. Churner, 532 U.S. 731, 738, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001)). The Court in Ross identified three circumstances in which an administrative remedy may be unavailable:

> First, an administrative remedy may be unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Second, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In other words, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it. Third, an administrative remedy may be unavailable when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

Williams v. Correction Officer Priatno, 829 F.3d 118, 123-24 (2d Cir. 2016) (citing Ross, 136 S. Ct. at 1859-60) (quotation marks and citations omitted).

It is undisputed that Wright failed to exhaust his administrative remedies by pursuing all three steps of the grievance and appeal procedures. After his initial grievance was denied and returned as untimely at the first stage, the only action Wright took was to simultaneously write to the Superintendent of Attica and Commissioner of DOCCS. Wright admits that he took no action after that. (Plaintiff's Statement of Material Facts, Docket No. 25, p. 1.) This plainly does not constitute exhaustion under the scheme set forth above. Because it is undisputed that Wright failed to properly appeal the denial of his grievance and consequently failed to exhaust all administrative remedies that were available to him, his complaint must be dismissed. See Guarneri v.

West, 782 F. Supp. 2d 51, 59 (W.D.N.Y. 2011) ("Each level of the grievance procedure must be exhausted before an inmate may commence litigation in federal court.").

## IV. CONCLUSION

For the reasons stated above, Stewart has established that she is entitled to summary judgment dismissing Wright's complaint in its entirety for failure to exhaust administrative remedies. The complaint will therefore be dismissed.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 22) is GRANTED.

FURTHER, that the third amended complaint (Docket No. 7) is DISMISSED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated: January 9, 2018
       Buffalo, New York

    /s/William M. Skretny
     WILLIAM M. SKRETNY
    United States District Judge